UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES R. JONES,

                              Plaintiff,              08-CV-6586

              v.                                      **DECISION
                                                      and ORDER**

LIFE INSURANCE COMPANY OF NORTH
AMERICA, CIGNA GROUP INSURANCE,
AND ELECTRONIC DATA SYSTEMS CORPORATION

                              Defendants.
_____

## **INTRODUCTION**

      Plaintiff, Charles R. Jones ("Plaintiff"), brings this action
pursuant to the Employee Retirement Security Act of 1974, 29 U.S.C.
§§ 1001 *et seq.* ("ERISA"), seeking long term disability benefits
under an employee benefit plan (the "Plan") offered by his former
employer, Electronic Data Systems Corporation, and issued by Life
Insurance Company of North America ("LINA").  Plaintiff alleges
that he is disabled according to the Plan and therefore, he is
entitled to long term disability benefits.  He further alleges that
LINA breached a fiduciary duty owed to the him by denying his claim
for benefits.  Defendants deny Plaintiff's allegations and
counterclaim for restitution based on Plaintiff's receipt of Social
Security Disability benefits, for which it alleges that it is
entitled to offset under the Plan.

      Defendant LINA asserts that defendants Electronic Data Systems
Corporation ("EDS") and Cigna Group Insurance ("Cigna") were

improperly named as defendants this case.  LINA attests that Cigna is not a legal entity and is merely a service mark used by LINA. <u>See</u> Def. Resp. to Pl. Rule 56.1 Statement(Docket #46), note 1. Further, the Complaint does not contain any factual allegations against EDS, as LINA made all decisions regarding Plaintiff's claim for benefits, which are ultimately paid by LINA. (Docket #1.) Plaintiff has neither responded to LINA's arguments nor sought to amend his Complaint to include additional factual allegations against EDS or to contest LINA's assertion that Cigna is merely a service mark. Accordingly, EDS and Cigna are hereby dismissed as defendants in this case, and the Clerk of the Court is hereby directed to remove Electronic Data Systems Corporation and Cigna Group Insurance from the caption.

Both Plaintiff and LINA move for summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). Plaintiff argues that he was wrongfully denied benefits under the plan and that LINA breached a fiduciary duty owed to him pursuant to ERISA. <u>See</u> <u>Pl. Mem's of Law</u> (Docket # 36).  LINA argues that its decision to deny Plaintiff benefits is supported by the administrative record ("AR LINA") and that, as the insurer, it does not owe the Plaintiff a fiduciary duty. <u>See</u> <u>Def. Mem's of Law</u> (Docket #40, 45).  LINA further contends that according to the Plan and a reimbursement agreement signed by the Plaintiff, Plaintiff is required to reimburse LINA for any overpayment of benefits

resulting from the receipt of other disability benefits, including Social Security Disability benefits.  Id.

For the reasons set forth below, this Court grants in part and denies in part both Plaintiff and Defendant LINA's Motions for Summary Judgement.  LINA is hereby Ordered to calculate and pay Plaintiff the benefits due under the contract, retroactive to October 26, 2006 with interest.  Such benefits, however, shall be offset by $35, 877.40,  the amount owed to LINA resulting from Plaintiff's receipt of Social Security Disability benefits, pursuant to the Plan and reimbursement agreement.

## BACKGROUND

The following facts are taken from the parties' submissions pursuant to Local Rule 56.1 and the administrative record submitted in connection with the instant motion.  See AR LINA and Docket #'s 36, 39, 46.  Plaintiff began working for Electronic Data Systems Corporation ("EDS") on March 1, 2004 as a computer systems administrator.  While employed by EDS, Plaintiff was a participant in an employee benefit plan, which included long term disability insurance, issued by LINA to EDS.

Plaintiff began experiencing neck and back pain and his treating physician, Dr. Nicolas Venci, took him out of work on April 20, 2004.  After submitting medical records from Dr. Venci and Dr. James Maxwell, Plaintiff's treating neurosurgeon, indicating that Plaintiff was suffering from degenerative disc

disease, which required surgery, and carpal tunnel syndrome, LINA approved Plaintiff's claim for short term disability benefits through October 25, 2004.   Thereafter, based on additional documentation regarding his condition, Plaintiff was approved for an initial period of long term disability insurance coverage beginning on October 26, 2004.  During the initial period under the Plan, which lasts 24 months, "The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is: (1) unable to perform the material duties of his or her Regular Occupation; and (2) unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation." (AR LINA at 210, emphasis added).

Plaintiff underwent an anterior cervical fusion on December 2, 2004.  Following the surgery and the estimated recovery period, in June 2005, LINA medical director, Dr. Scott Taylor reviewed Plaintiff's claim and determined that the initial period of long term disability should continue, as the medical records from Plaintiff's treating physicians and x-rays indicated that Plaintiff had not completely healed from the surgery.  Accordingly, Plaintiff continued to receive long term disability benefits.  See AR LINA at 71-2.

Plaintiff's claim was reviewed again in December 2005 by Ann Conaway, RN.  Ms. Conway found that Plaintiff's condition had improved, based on an updated x-ray which showed healing of the

surgical fusion, and a note from a nurse practitioner in Dr. Maxwell's office, who reported that Plaintiff's fusion was progressing slowly and that Plaintiff had reported some post-surgical improvements in his condition. Accordingly, Conaway concluded that the "available medical evidence did not support permanent functional impairment." See Def. Local Rule 56.1 Statement at ¶27.

Conaway made this determination, however, after reviewing evidence from Dr. Maxwell, opining that Plaintiff was permanently disabled due to neck and back pain that worsened with physical activity. See AR LINA 282. Dr. Maxwell also stated that Plaintiff was unable to devote more than an hour to any activity and that his pain was so severe that he could not work. Dr. Maxwell attributed the pain to post-surgical nerve scarring, but further surgery was not an option. Dr. Maxwell also noted the worsening of Plaintiff's carpal tunnel syndrome. At that time, Conaway noted that Plaintiff's pain medications included flexeril and sulindac. He was also taking medication for allergies, hypertension and depression. Physical therapy was discontinued because it aggravated Plaintiff's pain. See AR LINA at 49.

Thereafter, LINA arranged for Plaintiff to complete a Functional Capacity Assessment ("FCE") in January 2006. Daniela Morone, a physical therapist from Greater Rochester Physical Therapy, completed the FCE over a two day period. See AR LINA 445-

454.  She stated that Plaintiff was cooperative during the FCE and "was willing to work to his maximum abilities." Id. at 452.

Morone found that Plaintiff was capable of performing sedentary level work, which requires the ability to "exert up to 10 pounds of force occasionally and/or a negligible amount of force frequently...[and] involves sitting most of the time, but may involve walking or standing for brief periods of time." See AR LINA 453.  Morone stated that Plaintiff needed to restrict overhead lifting and forward bending, could only sit or stand for 34-66% of the work day each, and had significant deficits in cervical and lumbar range of motion, step ladder climbing and crawling.  Morone also noted that during the exam, Plaintiff was limited to sitting for about 20 minutes during the physical exam and 20 minutes during the sitting portion of the exam.  Plaintiff's ability to complete the tasks lessened towards the end of the exam and he needed to take stronger pain medication (gabapentin) after the first day and before the second day of the exam.

Plaintiff's claim was then reviewed by Ginny Schmidt, a vocational rehabilitation counselor at LINA. See AR LINA at 44. Schmidt, without examining the Plaintiff and reviewing only the FCE, determined that Plaintiff could carry up to 20 pounds; frequently sit and stand, continuously walk and reach below the waist; engage in fine manipulation and simple grasping; occasionally grasp approximately 95 pounds, push 70 pounds and pull

107 pounds; climb stairs continuously and ladders frequently; continuously balance, kneel and crouch; and frequently stoop and crawl. Accordingly, she found that Plaintiff could perform sedentary work and ordered a Transferable Skills Analysis ("TSA"). The TSA, dated April 6, 2006, states that, given Plaintiff's skills, education, experience and physical limitations, he can perform the following four jobs: Maintenance Scheduler, Service Clerk, Repair-Order Clerk and Maintenance Dispatcher. See AR LINA at 429.

Based on the FCE and the TSA, LINA determined that Plaintiff was ineligible for continued long term disability benefits after the expiration of the initial 24 month period on October 26, 2006. After the 24 month period, disability under the Plan is defined as follows: "After Disability Benefits have been paid for 24 months, you are Disabled if Injury or Sickness makes you unable to perform the material duties of any occupation for which you may reasonably become qualified based on education, training, or experience or solely due to Injury or Sickness you are unable to earn 60% or more of your Indexed Covered Earnings." Accordingly, because LINA determined that the Plaintiff was able to perform sedentary work, he would no longer be disabled after the 24 month period when the definition of disability changed to the "any occupation" definition. On May 13, 2006, Plaintiff was sent a letter explaining LINA's determination and instructing the Plaintiff on

his right to appeal the determination and to submit additional information.

With the assistance of counsel, Plaintiff appealed LINA's May 13, 2006. Then, on October 27, 2006, LINA upheld their determination based on the same evidence. Plaintiff was advised, however, that he could submit additional information in support of his claim. See AR LINA at 249-50. Plaintiff's attorney submitted a letter to LINA with additional information on October 27, 2006.[1] See AR LINA at 339.

Plaintiff submitted additional medical records from Dr. Maxwell and Dr. Venci. Dr. Venci completed a Physical Capacity Evaluation in August 2005 indicating that Plaintiff could occasionally lift 10 pounds, but never lift more than 10 pounds; that he could never climb, balance, stoop, kneel, crouch, crawl or reach above shoulder level; he suffered from disabling fatigue due to medications and trouble sleeping; and he suffered from disabling severe pain which precluded the attention and concentration required for even simple tasks. Additionally, Dr. Venci's office notes from 2004 through 2006 indicate that Plaintiff continued to experience severe pain, for which Celebrex, Neurontin, Advil, Flexeril and physical therapy were prescribed. See AR LINA 358-

---

[1] Plaintiff was apparently under the impression that he had until this date to submit additional information to LINA before the first appeal determination would be made. However, LINA permitted Plaintiff until April 25, 2007 to submit additional information for further review. See AR LINA at 332.

369. Plaintiff also submitted additional information regarding the progression of his carpal tunnel syndrome, for which surgery was eventually recommended. See AR LINA 348-9.

Plaintiff also submitted letters from Dr. Maxwell to Dr. Venci in July and August 2006, indicating that Plaintiff continued to suffer from back and neck pain radiating to his arms and that he continued to experience carpal tunnel symptoms bilaterally. Dr. Maxwell opined that Plaintiff "can not do anything for more than an hour or two because of neck and bilateral shoulder pain" and that "his subjective level of pain sounds work precluding."  He stated that work may be possible, but his restrictions would be severe. See AR LINA at 344.

Plaintiff's counsel also sent a second appeal letter on April 25, 2007, with additional information including, inter alia, an updated medical source statement from Dr. Venci and a vocational analysis report from Victor Alberigi, CRC, CCM, LPC.  In the medical source statement, dated, February 5, 2007, Dr. Venci states that the Plaintiff suffered from chronic, moderate to severe pain due to degenerative disc disease and his prognosis was poor. Dr. Venci stated that Plaintiff was significantly limited in motion and was suffering from severe headaches, secondary to the impairment of the cervical spine and depression.  He stated that Plaintiff was not a "malingerer" and that his impairments were consistent with his symptoms and functional limitations.  He stated that Plaintiff

was "incapable of even low stress jobs;" he could sit or stand for less than two hours out of an eight hour workday and he could only sit for 20 minutes continuously or stand for 15 minutes continuously. Plaintiff could rarely carry 10 pounds and could never carry anything heavier. Plaintiff also had significant limitations in fingering and handling due to carpal tunnel syndrome. Plaintiff needed to take frequent breaks and would likely miss more than four days of work per month. Lastly, he stated that Plaintiff's condition had persisted with these limitations since its onset in April 2004. See AR LINA 285-290.

Plaintiff also submitted a Vocational Analysis Report from Victor Alberigi, CRC, CCM, LPC, dated March 27, 2007. Mr. Alberigi noted that the TSA prepared by Ginny Schmidt for LINA ignored Plaintiff's diagnosis of carpal tunnel syndrome, which would make frequent use of his hands difficult. He also opined that the TSA was inconsistent with the medical source statement prepared by Dr. Venci in 2005 and the reports of Dr. Maxwell, which state that the Plaintiff was not capable of carrying 20 pounds (Dr. Venci) or engaging in activity for more than an hour at a time (Dr. Maxwell). Further, Alberigi points out that during the FCE exam, Plaintiff was incapable of sitting for more than 20 minutes at a time. Alberigi also indicated in a separate letter that Plaintiff's medications, including Paxil, Celebrex and Neurontin, could limit his ability to concentrate and cause drowsiness, side effects which

were reported by Plaintiff to his treating physicians on several occasions. See AR LINA at 267, 291-296,

LINA Associate Medical Director, Dr. John Mendez, reviewed Plaintiff's claim and found that "[b]ased on the provided additional medical records, the original assessment remains unchanged because there is still no validation of less than sedentary functionality, as established by the FCE performed back in 1/06." See AR LINA at 255. Dr. Mendez cited portions of the administrative record to support his decision, but he ignored Dr. Maxwell's opinion that Plaintiff was unable to work and Dr. Venci's physical capacity assessments. Accordingly, LINA determined that Plaintiff was not disabled under the Plan and upheld the original decision to deny him benefits. See AR LINA at 246-248.

Plaintiff was awarded Social Security Disability benefits in September 2007, retroactive to October 2004.  The Notice of Award states that Plaintiff would receive a lump sum payment of $60,225.50 for amounts due through September 2007. Thereafter, Plaintiff would receive $1,801.00 per month, less the cost of medical insurance premiums and other offsets. (Docket #38-9.).  Defendant states that Plaintiff actually received $41,177.40 from October 26, 2004 to October 26, 2006, including $5,300 in attorney's fees, resulting in an overpayment of benefits by LINA in the amount of $35,877.40.

The Plan contains a provision that any benefits payable under the Plan will be directly offset by any Social Security Disability

benefits that are received by a claimant for the same period. Plaintiff also signed a reimbursement agreement dated November 19, 2004, pursuant to which he agreed to reimburse LINA for any Social Security Disability benefits received in addition to the benefits received under the Plan.  LINA states that according to the Plan and the reimbursement agreement, it overpaid $35, 877.40 in benefits and is entitled to reimbursement in that amount.  Plaintiff has not contested LINA's calculations.

## DISCUSSION

**A.  Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. See Scott v. Harris, 550 U.S. 372, 381 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. See Scott, 550 U.S. at 381 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587).

Pursuant to the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), a *de novo* standard applies to the review of a denial of benefits under the ERISA statute, § 1132(a)(1)(B), "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  In its initial papers in support of its Motion for Summary Judgment, LINA, citing Firestone, states that a *de novo* standard of review applies to the instant action, because, it admits, "the [Plan does] not contain language conferring discretion on LINA." See Def. Mem. of Law at 13, Docket #40.  Plaintiff, filing his Motion for Summary Judgment on the same day, states in his moving papers that the "arbitrary and capricious" standard of review applies to this case because LINA "is vested with discretionary authority to interpret the provisions of the [Plan]." See Pl. Mem. of Law at 9, Docket #36. Plaintiff does not cite any language from the Plan to support this contention.  Defendant, in its responding papers, adopts the more deferential, arbitrary and capricious standard of review, based solely on the Plaintiff's moving papers.

The Second Circuit has held that the more deferential arbitrary and capricious standard of review applies only where "the policy language reserving discretion has been clear." See Kintsler v. First Reliance Standard Life Insurance Company, 181 F.3d 243, 251 (2d Cir. 1999). In Kinstler the Court found that language which

requires a claimant to submit "satisfactory" proof of disability was "insufficient to preclude *de novo* review." Id.  Further, "[t]he party claiming deferential review should prove the predicate that justifies it." See Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230 (2d Cir. 1995).

The parties do not point to any language that would suggest that LINA was entitled to make discretionary decisions with respect to an insured's eligibility to receive benefits.  The Plan states that Plaintiff must provide "proof of disability" (AR LINA at 210, 216).  Such language is not sufficient to reserve discretion to LINA. See Kinstler, 181 F.3d at 251-2.  Further, LINA is required to "prove the predicate" that justifies this Court's employment of the arbitrary and capricious standard of review.  However, after admitting that the Plan did not reserve it discretion, LINA merely cites to the Plaintiff's mistake in applying the lesser standard to this case, rather than to any language conferring such discretion in the Plan.  This Court finds that LINA has not met its burden with respect to this issue and further, that the Plan does not contain sufficient language to reserve discretion to LINA.  Therefore, this Court will employ a *de novo* standard of review.

**B. Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment claiming that he is entitled to receive long term disability benefits, as he is disabled under the Plan.  Plaintiff argues that LINA ignored relevant

evidence from his treating physicians, and instead chose to rely on the FCE and TSA, to the exclusion of other valid medical evidence in support of his claim for disability.  Accordingly, Plaintiff argues that Defendant failed to conduct a "full and fair" review of his claim and that he has presented sufficient evidence of disability under the Plan.

Defendant argues that the record does not contain sufficient evidence to support Plaintiff's claim for disability following the initial 24 month period, after which the "any occupation" disability definition applies.  Further, Defendant argues that it is not required to defer to the opinions of Plaintiff's treating physicians, and there is evidence in the record that Plaintiff's condition had improved following surgery on his back.

After reviewing the record in its entirety, this Court finds that Plaintiff presented substantial evidence that he was disabled under the "any occupation" Plan definition of disability, and that he is entitled to receive long term disability benefits under the Plan, retroactive to October 26, 2006, the date LINA determined that he was no longer eligible for benefits.

Defendant correctly argues that ERISA does not require the insurer to defer to the disability determinations of the insured's treating physicians. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 829-834 (2003).  However, the insurer must conduct a "full and fair review" of disability denials and, in conducting such a

review, "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Id. at 834; 29 U.S.C. § 1133(2). Further, in conducting a full and fair review, "the plan's fiduciary must consider any and all pertinent information reasonably available to him [and t]he decision must be supported by substantial evidence...." See DeVere v. Northrop Grumman Corp., 1999 WL 182670 (E.D.N.Y. 1999), aff'd 201 F.3d 431 (2d Cir. 1999)(citing Crocco v. Xerox Corp., 956 F.Supp. 129, 139 (D.Conn. 1997)).

Here, both of Plaintiff's treating physicians, with whom he had maintained long standing treatment relationships, concluded that Plaintiff was unable to perform the tasks of even low stress, sedentary jobs. Dr. Maxwell stated that Plaintiff could not perform activities for more than an hour at a time, and Dr. Venci stated that he was incapable of lifting more than 10 pounds or standing or sitting for more than 20 minutes continuously, and he could only sit or stand for 2 hours in an 8 hour workday. Plaintiff also would need to take frequent breaks and would likely miss more than four days of work per month. Both physicians and Plaintiff's consultant, Alberigi, noted Plaintiff's worsening carpal tunnel syndrome, which significantly limited his ability to work with his hands and which is effectively ignored in all of LINA's determination letters and claim documentation.

Plaintiff's physicians also noted that he is not a "malingerer" and Plaintiff was reported to be cooperative and worked to the best of his ability at the FCE examination. However, Plaintiff was still unable to sit for more than 20 minutes continuously during the FCE, and it was noted that after activity, and especially on the second day of the FCE testing, Plaintiff struggled and needed to take stronger pain medication.

LINA argues that they conducted a full and fair review of Plaintiff's claim, however, the record does not indicate that they considered the totality of the medical evidence submitted by the Plaintiff.  This Court finds the catch-all statement contained in LINA's determination letters (that the evidence they considered "includes but is not limited to" certain documents) does not support the inference that they also considered Plaintiff's proffered evidence. Put simply, Plaintiff submitted substantial evidence regarding his physical limitations, by physicians who treated the Plaintiff over several years, yet this evidence is not mentioned in the FCE report, the TSA or the denial letters from LINA.

The record clearly indicates that LINA cherry-picked selective item of submitted evidence in order to support its decision that the Plaintiff was not disabled under the Plan.  For example, LINA cites the treatment note of a nurse practitioner in Dr. Maxwell's office stating that the Plaintiff had noticed some improvements following surgery.  However, LINA does not afford weight to Dr. Maxwell's

actual treatment notes during the same time frame, which state that, while Plaintiff was healing slowly from the surgery, he was experiencing severe, activity-precluding pain, which prevented him from engaging in activity for more than an hour at a time.  Dr. Maxwell attributed the pain to post-surgical scarring, and indicated that further surgery was not an option.  He opined that Plaintiff could not work at that time. He specifically states that Plaintiff's pain "markedly exacerbates when he tries to do anything physical, even simple stuff about the house. He cures himself by changing position and by lying down. He can't be faithful to any tasks for more than an hour because of pain...I think he is stuck on a plateau of chronic paid that I can not get him off of. It sounds severe enough that I don't think he can work. I think he should apply for permanent disability because of the above pains." See AR LINA at 282.

LINA utilizes the FCE in making its determination, but fails to note that even the FCE examiner stated that Plaintiff was unable to sit for more than 20 minutes at a time during the exam. Further, Dr. Mendez, reviewing Plaintiff's claim lists several items of medical evidence relied upon to make his determination, but does not list any of the treatment notes from Dr. Maxwell or the physical capacity assessments from Dr. Venci. Rather, he relied upon the FCE the TSA and a limited selection of treatment notes from Dr. Venci which do not specifically discuss Plaintiff's physical limitations.

While the FCE examiner opined that Plaintiff could perform sedentary work with restrictions and the TSA found several jobs that Plaintiff could perform considering those restrictions, LINA was required to consider all of the evidence of record, the majority of which consists of reports from Plaintiff's treating opining that he is unable to work and detailing Plaintiff's specific functional limitations, which preclude work related activities.

After reviewing the entire record, this Court finds that the totality of the evidence supports Plaintiff's claim that he is disabled from performing "any occupation" under the Plan definition of disability.  Accordingly, this Court grants Plaintiff's Motion for Summary Judgment with respect to his claim for long term disability benefits under the Plan.

With respect to Plaintiff's claim for breach of a fiduciary duty, this Court notes that Plaintiff's claim is largely duplicative of his claim for long term disability benefits, and the relief he seeks is identical, which is the reinstatement of his benefits. This Court finds that granting further relief for the alleged breach of a fiduciary duty is not appropriate in this case because this Court has already determined that Plaintiff is entitled to long term disability benefits under the Plan. See Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76, 89-90 (2d Cir. 2001)(citing Varity Corp. v. Howe, 516 U.S. 489, at 515 (1996)).  Therefore, Plaintiff's claim for breach of a fiduciary duty is denied.

**B. LINA's Motion for Summary Judgment**

LINA moves for summary judgment on its Counterclaim for reimbursement under the Plan for Plaintiff's receipt of Social Security Disability benefits, pursuant to 20 U.S.C. § 1132(a)(3). Plaintiff argues that this Court does not have subject matter jurisdiction to decide this claim pursuant to the Supreme Court's decision in <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204 (2002). In <u>Great-West</u>, the Supreme Court held that claims under § 1132(a)(3) are cognizable only to the extent that the claimant seeks equitable relief. 534 U.S. at 209-210. Accordingly, as claims for money damages are the "classic form of *legal* relief," Plaintiff argues that this Court cannot grant LINA relief on its Counterclaim. <u>See</u> Pl. Mem. Of Law in Response to Def. Motion for Summary Judgement at 10 (citing <u>Great-West</u> 534 U.S. at 210).  Plaintiff also argues, for essentially the same reason, that LINA has not stated a claim upon which relief may be granted.

Defendant contends that a later Supreme Court case, <u>Sereboff v. Mid Atlantic Medical Services, Inc.</u>, 547 U.S. 356 (2006), distinguished <u>Great-West</u>, and supports its claim for reimbursement. <u>See</u> Def. Reply (Docket #49) at 7-10. Further, it argues that Courts in this Circuit have held that claims for reimbursement of Social Security Disability benefits under similar circumstances are considered equitable claims for restitution, and therefore this Court has subject matter jurisdiction over LINA's claim and LINA has

stated a claim upon which relief may be granted. Id. This Court agrees.

In Sereboff, that Supreme Court held that a claim for reimbursement based on an ERISA benefit plan provision, which provided that the insurer would be reimbursed for funds received from a third party, was equitable in nature because "it sought to impose a constructive trust or equitable lien on 'particular funds or property in the defendants's possession.'" 547 U.S. at 362 (citing Great-West, 534 U.S. at 213). The Sereboff Court distinguished Great-West because the funds received by the Plaintiff in Great-West were not actually in her possession, but in a trust created under California law. Id. at 363. Such facts are not present here or relevant to this case. Further, contrary to Plaintiff's argument, the Sereboff Court also rejected a requirement that the funds sought to be recovered be directly traceable to particular funds in the defendants' possession, rather than from the defendant's general assets. 547 U.S. at 364-5.

District Courts in this Circuit have followed Sereboff in cases with factual circumstances similar to the instant action (i.e. an insurance company seeking restitution for overpayment of benefits due to the receipt of social security disability benefits) and have found that such claims are cognizable under ERISA. See Aitkins ex rel Casillas v. Park Place Entertainment Corp., 2008 WL 820040 (E.D.N.Y. March 25, 2008)(citing cases). This Court finds that

LINA's claim for reimbursement of funds pursuant to the Plan and the reimbursement agreement is equitable in nature, that this Court has jurisdiction to decide the claim, and that, LINA has stated a claim upon which relief may be granted.

Plaintiff also argues that LINA seeks to "recover the proceeds from social security benefits, which, he argues, 42 U.S.C. § 407(a)[2] expressly prevents." See Pl. Mem. of Law in Response to Def. Motion for Summary Judgement at 15.  However, Courts in this Circuit and others have also rejected this argument. See Solomon v. Metropolitan Life Ins.Co., 628 F.Supp.2d 519, 534 (S.D.N.Y. 2009)(finding that § 407 was not a bar to recovery because the "counterclaim asserts a property interest in [Defendant's] own overpayment of benefits rather than [Plaintiff]'s social security benefits."). Accordingly, this Court does not find that § 407 is a bar to recovery on LINA's Counterclaim.

Plaintiff has not disputed the substantive elements of LINA's Counterclaim for reimbursement, i.e. that it is entitled to reimbursement under the Plan, that Plaintiff received Social Security Disability benefits, and that the amount of restitution owed is $35,877.40.  This Court finds that LINA's claim is equitable in nature and that neither the Supreme Court's decision in Great-

---

[2] 42 U.S.C. § 407(a) reads, "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

West nor 29 U.S.C. § 407(a) are a bar to LINA's claim, and accordingly, this Court hereby grants LINA's Motion for Summary Judgment on its Counterclaim for offset in the amount of $35,877.40.

## CONCLUSION

For the reasons set forth above, this Court grants in part and denies in part Plaintiff and LINA's Motions for Summary Judgment. Accordingly, it is hereby

ORDERED, that LINA calculate and pay Plaintiff long term disability benefits, retroactive to October 26, 2006, with interest;

FURTHER, that Plaintiff's claim for breach of a fiduciary duty is hereby dismissed;

FURTHER, that the long term disability benefits paid to Plaintiff pursuant to the Plan shall be offset by $35,877.40;

FURTHER, that Cigna Group Insurance and Electronic Data Systems Corporation are dismissed from this action and the Clerk of the Court is Directed to remove Defendants Cigna Group Insurance and Electronic Data Systems Corporation from the caption.

ALL OF THE ABOVE IS SO ORDERED.

s/ Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         May 20, 2011